May it please the court, counsel, I'm Robert Irwin for the Alaska Constitutional Legal Defense Conservation Fund, which is a really mouthful, and seven or eight, both residents of Alaska and non-residents of Alaska, but U.S. citizens. This case is basically a case about regulations which are intended to establish a rural preference for hunting and fishing on federal land in Alaska. This is a contention of the plaintiffs in this case, that the regulations are unconstitutional when applied to the plaintiffs, and they are all urban residents of Alaska, or non-residents of Alaska, and basically the argument is that these are a denial of equal protection, they violate the Commerce Clause, they exceed the authority granted in the statute of ANILCA, which sets forth the rural preference. And just by way of, the size of Alaska does create an image that it is both rural and urban, but the location of federal land in Alaska, which is really approximately 60% of the total land area, really makes this an unusual thing, because there's no identifiable way which you could say, alright, you're on the Arctic Ocean, you're obviously rural, or you're here, you're obviously urban. The federal land is scattered in such a way it's totally intermixed with the entire volume of population in Alaska. Now the population, as the regulations are very specific, is taught between urban and rural. And the urban population we're talking about, which is excluded from hunting or fishing on federal land, is more than 70% of the population of Alaska. So you have 70% of the population of Alaska is totally excluded for applying or being permitted to hunt or fish. But there's a perfectly rational reason for that, as I understand it. You're dealing with a rational basis test insofar as your Equal Protection Clause is concerned. I have argued against that, Your Honor. I understand the rational basis test, and it's based on, is it a denial of a basic right, and therefore we look at it, or whether we look at it as strict scrutiny, intermediate scrutiny, or sort of a rational basis for what the government asks. I'm arguing to the court that ANILCA, since it specifically only applies to Alaska and no other part of the United States, you would look at this concept of whether or not you have a specific right which is being delegated to the Alaska Constitution, because you're talking about Alaska, and Alaska is the only place in the United States which has a constitutional provision which gives to each citizen the right to the resources of the state. Well, just a second here. It seems to me we're mixing apples and oranges. We're talking about a federal action under ANILCA which devised federal lands to which the United States held title, and in devising those lands, Congress provided by statute for certain restrictions on the manner in which those lands were to be used. Now, you're raising an Alaska constitutional provision which seems to raise a preemption issue, and to the extent that Congress has acted contrary to the Alaska Constitution with all deference to the good citizens of Alaska, to that. I'm not arguing that, Your Honor. All right. Federal preemption obviously controls. What I'm saying to you is when Congress defies this specifically method of treating public lands in Alaska and ANILCA, they were looking to Alaska. They were looking to the rights of the citizens. Well, it's true, because we were talking about hundreds of millions of acres that the United States owned before it divested itself of a fair amount of that acreage, but the question that Judge Berzon, I think, was pursuing with you was, didn't Congress have a good reason to provide in its stipulation with regard to subsistence hunting and fishing that there was a population, small though it may be, confined to very rural and in many cases inaccessible areas of the state where Congress recognized that the native peoples who lived there depended upon the land and the waters for their very existence, for their subsistence? And isn't that a rational reason for Congress to draw a distinction between urban Alaskans who can go down to the car's grocery store and fill up on whatever they need as opposed to rural Alaskans who may actually have to go out and hunt or fish for their food? Well, you're talking about what Congress put forth was a rural preference, and a preference is not, by its very terms, it's not an exclusion of all other people. It provides a preference of... Well, it doesn't matter if the resources, it begins to disappear, correct? But the regulations are not based on what the resources are, other than to provide a method to look at the resources. Does it... They actually exclude the application of any person. But before we talk about excluding, can't Congress promulgate reasonable restrictions with regard to the protection of various species of animals and fishes in order to protect the resource? In one sense it can, Your Honor, on federal land because of the... Pardon me, I search for a word in my ages. It happens by virtue of the property clause of the Constitution, which allows them, and certainly... And it does that through the subsistence board, right? So they can do so. And it does that through the subsistence board? It can, yes, Your Honor. That's how it works here? That's exactly how it works here. Okay, all right. And then the subsistence board promulgates rules and regulations and decides what's urban and what's rural, and then it decides if there's a threat to the resource, who gets preference over the limited amount of fishing that will be permitted in order to preserve and protect the resource, right? And what's irrational about that scheme? Well, the question is... That violates equal protection. It says you are excluded if you're in a certain geographical area from even applying without consideration of one, without consideration of what the resource is, how much of it there is, whether or not... Yes, but the determination has already been made in advance by the board that this is a situation in which there is a need to restrict access to the resource. Just by virtue of where you are, by saying you're rural, and that, therefore, anyone else who may have come from that source lives in some other area. We're not talking about... That's right. That's exactly right. So what's wrong with that? Well, it does discriminate against... You make it sound so evil, but this is what government does. Government draws lines between people. It draws distinctions. It says if you're going down the road at 35 miles an hour, you're lawful. If you drive 40 miles an hour, you're acting illegally. You say, well, there's really no rational distinction between the two. They're very close. But you've got to draw a line somewhere. And that's what government does. It's the nature of government, is they draw lines between people, and they put people on one side and put people on the other side. Essentially, in the end, all that government really does is this essential function. So what's wrong with that? They say, okay, we've come up with a system. We can't let everybody hunt and fish because pretty soon there wouldn't be any fish or wildlife left. So we're going to allocate it, and we've figured out a way of allocating it. That sounds pretty rational. So let me ask you a question, Your Honor. Why shouldn't everybody be permitted to hunt and fish, and who decides without anything going? Because a decision has been made, and the question is whether it's rational. And the decision that's been made is that people who really need the resources because they depend on it for their livelihood, because they live someplace where they can't just go shopping and get the resources otherwise, it is rational to prefer then, when there are limited resources, rather than to operate by law. I mean, the other possibility is to do it by law, right? It's to say, everybody who wants to hunt and fish, come here, and since there's only limited resources, we'll pull it out by law. And the government has decided, well, that doesn't make sense because some people need it more than other people. What's wrong with that? Well, because it simply takes citizens who have a right and says, all right, you group of citizens can and you group of citizens said. That's right. What's been given by statute is a preference. The preference is to use if you have that, if you have a subsistence need. The regulation simply doesn't say if you have a need. It says you are here, you're excluded, even if you can prove you have a subsistence use. You may have come to here from here and you're in the hospital, or you may have gone from here to there. Everything you say is exactly right. So what? If you don't like it, throw the rascals out. Organize, make sure that other people get elected, and the people that you like get elected, and they may come up with a different plan for dividing up the pie. What's wrong with that? As I say, my clients feel that this is preferable to throwing the rascals out, coming to court and asking the court to say they're citizens. I know they would prefer it, but this is not how a government works. You don't like the way the government operates. The normal remedy is you vote for somebody else who adopts a policy that's more sympathetical to your point of view. But what's your legal claim here? My argument is that my clients have a constitutional right to hunt and fish. I'm sorry, where is that? The Second Amendment, the right to arm bears? Well, I'm arguing, Your Honor, basically from a new order. Where is that constitutional right to hunt and fish? I recognize that the federal preemption is yours. I'm sorry, there's not a federal constitutional right to fish and hunt. No, I'm not first to say it was going to say to you that Alaska has attempted on admission as a state into the Union to provide each of its citizens with that right. What I'm saying to you in arguing to the court that that is some view or some interpretation that you should give to a basic right to the citizen of Alaska. But in light of your earlier concession that there would be federal preemption here, doesn't that end the discussion? Even if there is an Alaska state constitutional right, it must yield on a rational basis scrutiny and preemption to the scheme that Congress has established? I would argue, Your Honor, there would only be preemption if there was a conflict between the two. And my argument is that there is no conflict. Well, you wouldn't be here if there wasn't a conflict. There would be no conflict between the two because when you're talking about preference, you're talking about the use to which the resource is put, not the people who use it. I don't see how there is not a conflict. The Constitution says that all citizens of Alaska shall have equal right to hunt and fish anywhere in the state. Congress has stipulated in giving away federal lands that there will be a preference afforded for subsistence hunting and fishing. If that doesn't contradict the Alaska state constitutional provision, I'm misreading it. Well, let me offer it, Your Honor. I offer the distinction is in the use, the use of the resource, not in the person or the people that use it. So my thing, you can establish a preference which says a type of uses. One, number one, rural Alaska residents. Number two, people who can prove they're very close to rural Alaska residents. Three, all other people. Those are uses. And therefore, in that way, there would be no conflict in the use. If you say people, there would be a conflict. Have you tried writing a letter to your senators suggesting that that's a good plan? Well, certainly. I mean, it sounds like a great plan to me, but write to your senators, write to your congressmen, write to the president. That's how we do things. If you don't like the current plan, get them to change it. Certainly, that's what's done in this case, Your Honor, and has been. Thank you. Your time is up. Thank you. May it please the Court, I'm Elizabeth Ann Peterson with the Federal FBI. How are you, Ms. Peterson? Very well. You know, you've come a very long ways, and I hate to ask you this question, but I will anyway. Anything that you've heard this morning that wasn't adequately answered in your brief? I would like to clarify something, if I may, Your Honor. I guess the answer is no. You give them the answers. Yes. I apologize, but my impression is that there may be two points of confusion that I think are important. One is that subsistence use is defined in the statute as the use by rural Alaska residents, the customary and traditional use by rural Alaska residents. So there is no conflict between regulation on the basis of uses and regulation on the basis of persons as defined by the statute, just for clarity. You don't think that was clear in your brief, huh? It is. The point is made in our brief. It is not focused in our brief, and I believe it does have clarity. No, I don't think it shatters, but it is. I'm eminently clear to me that one couldn't read the language to say that it's the uses that rural Alaskan residents make, but not necessarily uses only by them. In other words, you could read this if you wanted to, although there doesn't seem to be any reason to, to say that it's those uses that rural Alaskan residents makes, even if done by other people. But that isn't the way the regulations are read. Nor is it the issue of the case. And I only wish to bring it up in order to clarify that the distinction between one group of persons and another group of persons is made actually by the statute and not merely by the regulations that have been challenged here. It makes no difference, of course, does it? I don't think so, Your Honor, but I wouldn't like to see – I mean, if the distinction is rational in the regulations, then it's rational in the statute, and vice versa. If it offends equal protection, it offends equal protection equally whether it's by regulation or by statute, no? Correct, Your Honor. I just would not like to see the statute misquoted or misunderstood by others later as a result of any case that I represent as the United States. I just wanted to clarify a fact of that kind based on something Judge Traumann said. As I understand it, this only applies to federal land. It has nothing to do with land that the federal government gave away. Federal government still has. That is my other point, Your Honor. This preference applies only on land currently owned by the United States and managed by the United States. And it also does not exclude from hunting and fishing on those lands all non-rural Alaska residents only to the extent that taking a fish and wildlife on federal lands by those individuals would interfere with the provision of the priority that the statute requires. Sometimes it does, and the subsistence board, as I understand it, can say there's so little of this wildlife here that only subsistence users can use it. Absolutely. It could also say there's so little wildlife that even subsistence users can't use it. That's correct, Your Honor. It also happened here, right? There was a game management unit in a national forest that the plaintiffs wanted to hunt bighorn or dull sheep or something on, and it was determined that the stock of the particular species was dwindling, and so their permits were revoked in favor of allowing subsistence hunting. That's correct, Your Honor. The United States determined that, or the federal subsistence board determined that the stock on federal lands was not sufficient to meet the needs of both subsistence and non-subsistence users, and as a consequence the state closed the entire hunt, which took place on both federal and non-federal lands. These things probably don't matter, but you maintain your briefness argument that there's a limitations period problem here, and I find that very hard to understand. First of all, I don't understand that there could ever be a limitations period on the ability to challenge the constitutionality of the federal statute if you're affected by it, facially or otherwise. I don't understand this distinction between facial and as-applied challenges that the district court bought into. If I'm affected by a federal statute, even if it was enacted 100 years ago, I can challenge it, can't I? In this case, Your Honor, what is challenged is a regulation that is... No, but I thought prior to that the district court said that they couldn't challenge the statute because of a limitations period. That can't be right. That ruling is not on appeal here, Your Honor. I understand, but it can't be right. Well, what they're challenging is particular federal action. There's no such thing as challenging a statute in an abstract or challenging a regulation in an abstract. What they are challenging is the denial or the revocation of a permit. That's specific action by the federal government that the federal government has to justify. It then points to the statute, points to the regulation, and it is the pointing to those sources of law at the time it denies a permit that brings to sources of law into application today. So you can't possibly have a statute of limitations problem. I don't mean today. Today I mean the day the permit was denied. Your Honor, you have described the Wind Rivers Doctrine that would circumvent any statute of limitations problem here if... You know, when you say circumvent, you're really making it sound so naughty. I certainly didn't mean to, Your Honor. Your Honor, in this case, the appellant has specifically disclaimed any challenge to any particular action by the federal regulators. And for that reason... Well, but that's the foolish thing for them to say. The fact of the matter is what triggered the challenge was the denial or revocation of the permits. It was specific federal action that they were taking issue with. I don't believe that's correct, Your Honor. I believe the record has gradually developed over the course of a period of years during which the district court has attempted to determine what action was being challenged in this case. There was a permit denial. There were license revocations. License revocations. And it's alleged in the complaint. And it was in the requisite time period. And had they prevailed in their legal theory, I mean, I suppose there is an arguable mootness problem, but that we really haven't gotten to at this point. That would be the only counterweight, I suppose, is whether they still wanted to hunt there. But the application has been moved, so what's the problem? I do not believe we would consider there to be a statute of limitations problem to the specific action that resulted in the revocation of those licenses. Right. And insofar as we're reviewing that, to the extent that the federal government relies on the statute of regulation as a justification for the revocation of the license, it doesn't matter when the statute was passed. It doesn't matter when the regulation was promulgated. If those things come up, they can be challenged as invalid. That's correct, Your Honor. Let's say it turns out that the statute violates the religion clause or something. You could have a situation where somebody's denied a permit to hunt eagles or something like that, and you've got a real problem. You could challenge it today because the permit was revoked or denied today. Absolutely, Your Honor. We have not made any argument to suggest that a particular action by a federal agency, if timely challenged, could not allow a challenge to the underlying regulatory scheme. So what does it mean? In the last case as well, the sort of facial versus as-applied challenge seems to have taken on a life of its own. And in the district court here, for example, the district court seemed to be saying that this was an as-applied challenge. But it isn't, as I understand it, an as-applied challenge. He's not saying that this statute might be okay except as applied to the revocation of my sheep license. He's not focusing on the revocation. He's saying this whole thing is no good. Therefore, you couldn't revoke my sheep license. So that, in one sense, is a facial challenge, but it arises out of a particular set of circumstances. But he's not challenging it only as applied to those circumstances. Correct. And as we understand this challenge, it confuses the concept of standing, which is these individuals and this organization are affected by these regulations and feel that they are injured because they are classified as urban rather than as rural, but have not challenged any particular application or any particular determination that constituted an action by an agency to apply this statute to a particular set of circumstances. It's not directed to the revocation of any permit or the tax collection of any sheep hunting. Except that the action was filed after their sheep hunting permits were revoked and the challenge is my permit should not have been revoked on the grounds that I am an urban dweller and not entitled to subsistence hunting, right? That is correct, but the relief and the allegations are not specifically focused on a particular federal action, but rather on the fact that the federal regulations include three things and they are all the manner in which or the specific result of the distinction between urban and rural Alaskans for purposes of subsistence preference. And because the nature of the challenge is so general and so broad and directed at no particular federal... You seem to be saying even though they have a very specific problem, they can only raise a challenge that focuses on their specific problem rather than one that says the whole regulation is invalid, therefore our problem shouldn't have happened. And the district court construed it, what they could have brought, and the only thing that it did not dismiss, and I would like also to emphasize that the appellants here did not challenge the district court's ruling... I understand that, but you seem to be repeating it in a sense, which was disturbing. It seems to be at the core of your limitations period, which you did not prevail on at district court. That's correct, and our position is that there is a limitations period and that in order to have a cause of action to challenge the statute or the regulations on their face, as these plaintiffs in essence are doing, they needed to use the APA's waiver of sovereign immunity and challenge a particular action pursuant to the APA. And in so doing, they might raise any of these general challenges that they would otherwise have been able to bring within the original statute limitations when those federal actions were taken. And you don't think they challenged the revocation of licenses? They have specifically disclaimed that as the basis for their challenge. Where is that? The last page of the supplemental exits of record in there. I don't have supplemental exits of record. I do not have the form. Let me see if I can. Ms. Peterson, let me see if I can help my colleagues here because I'm having the same problem. If I look at the joint status report, which is, I think, excerpt of record 53, it's page two of the joint status report that was filed on April 8th of 2005. I find a sentence in the middle of the paragraph that says, plaintiffs are not contending that any specific role or non-role determination or any specific season or bag limit or any specific criteria for determining who is a rural Alaska resident is unlawful. Is that it? That is one place in which they do that. That's quite different. That's a complete different thing. They're not contesting the manner in which this regulation was applied to them. But they don't contest that. In their complaint, they identify three regulations. They cite three regulations and a number of Federal Register notices. You are in the process of telling us where they disown the challenge to the revocation of the licenses. This is a letter that appears on page 57 of the supplemental excerpts of record that says, this is to put into writing my representation to you at a status conference, that my clients are challenging the urban-rural distinction as reflected in the regulations of the Federal Subsistence Board and not any other specific actions or regulations except as they might mirror such distinction. OK, so where is that? That's on page 57 of the supplemental. Where do they disown reliance on the revocation of licenses? They never relied on revocation of licenses, Your Honor. Their complaint challenges the regulations themselves. You were going to point to something that says, we don't rely on revocation of licenses. You heard me say it doesn't contain those words. And I want you to explain to me where in those words that you did read me that this content is encompassed. And not any other specific actions or regulations except as they might mirror such distinction. Well, except as they might mirror such distinction. Except as they might mirror such distinction. So if we had our licenses revoked based on this distinction, we challenge them. Oh, I apologize, Your Honor. That language was interpreted by the government to mean that they challenged no action. Except to the extent they mirror such distinction. But we were attempting in that status conference to get the plaintiffs to ratify a specific act measured in which could be revoked by the court. Nice try. Not a successful try, but a nice one. Carried off with great bravado, I must say. You actually had to read the language. Thank you, Your Honor. Always the language that you... I would have said implemented and not mirrored. You know, I would have answered that question no, but there you are. My first question, but... But I... I guess you were right. Things were not as clear as I had thought they were. I'm going to have to go back and rethink. And, Your Honor, counsel for the interveners was to have had two minutes of my time, which I've now consumed more than all of. I guess that's an important lesson for the future, isn't it? Oh, thank you. In case it's all you, we'll cancel with it. Well, let's check argument in Ciumina, Laders v. United States Department of Interior. Thank you. We asked the government to file a supplemental brief in this case, which we have received, and which managed to sort of avoid answering the question that we asked, sort of carefully avoid answering the question, which is the question was whether or not the reinstatement was subject to the retroactivity provision in the statute. And the government's brief says all sorts of things, but carefully avoids answering that question. Maybe when we get the government to stand up and talk, they can explain to us why they filed a filing a brief that didn't answer the question asked. You may proceed.
judges: Kozinski, Berzon, Tallman